UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **MESA HILLS SPECIALTY HOSPITAL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **EP-23-CV-00459-FM** |
| **v.** | § | |
| | § | |
| **XAVIER BECERRA, Secretary,** | § | |
| **UNITED STATES DEPARTMENT OF** | § | |
| **HEALTH AND HUMAN SERVICES,** | § | |
| **and JANET YELLEN, Secretary,** | § | |
| **UNITED STATES DEPARTMENT OF** | § | |
| **THE TREASURY,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Before the court is Mesa Hills Specialty Hospital ("Mesa Hills") "Opposed Motion for Preliminary Injunction" [ECF No. 17], filed March 28, 2024. Therein, Mesa Hills requests that this court issue a preliminary injunction against the Department of Health and Human Services ("HHS") restraining the department from collecting monthly Medicare recoupment payments until a feasible repayment plan can be reached or a debt compromise given.[1] For the following reasons, Mesa Hill's request for a preliminary injunction is denied.

## I.    BACKGROUND

Mesa Hills is a business that voluntarily joined the Medicare act and became a services provider. Mesa Hills was assessed Medicare overpayments in the amount of $ 5,367,724.00.[2]

---

[1] "Opposed Motion for Preliminary Injunction" 10, ECF No. 17, filed Mar. 28, 2024.

[2] "Amended Complaint for Injunctive and Declaratory Relief and Attorney Fees" ("Amended Complaint") 1, ECF No. 13, filed Mar. 22, 2024.

Novitas, a third-party who checks fiscal year financial statements from Medicare providers, sent letters to Mesa Hills stating that there were overpayments made to them in 2018, 2019, 2020, and 2021.[3] Mesa Hills requested a hardship repayment plan under 42 U.S.C. 1395ddd(f)(1)(A) and (B) for these amounts. The statute specifies that if repayment of an overpayment would constitute a hardship as described under subparagraph (B) then the Secretary shall enter into a repayment plan with the provider of services for a period of at least 6 months but not longer than 3 years (or not longer than 5 years in the case of extreme hardship, as determined by the Secretary).[4]

On April 13, 2023, Novitas approved a three-year extended repayment plan for the 2018 and 2019 overpayments.[5] Then, on September 15, 2023, Mesa Hills was approved the full five-year extension for the 2020 and 2021 overpayments.[6] This all amounted to Mesa Hills needing to pay $ 128,611.62 a month.[7] However, Mesa Hills states that it suffered a net loss of over $ 8,000,000.00 in 2023, and that these monthly payments will force them to go bankrupt.[8] Therefore, on November 30, 2023, it requested an extension to the repayment plans to go beyond the statutorily prescribed five years.[9] On December 1, 2023, Novitas informed Mesa Hills that it had been given the maximum amount of time under the statute. Mesa Hills was offered the option to increase one of its repayment plans from a three-year to a five-year, but an extension beyond five

---

[3] *Id*. at 8.

[4] 42 U.S.C. § 1395ddd(f)(1)(A).

[5] Amended Complaint at 8.

[6] *Id* at 8–9.

[7] *Id*.

[8] *Id* at 9–10.

[9] *Id*.

years was not possible.[10] On December 13, 2023, Mesa Hills sent a presentment letter to HHS requesting an extension beyond five years to its repayment plans.[11] On December 28, 2023, HHS denied Mesa Hills request stating that the Centers for Medicare & Medicaid Services ("CMS") does not have the authority to extend a repayment plan beyond sixty months.[12] HHS continued that Mesa Hills may request a debt compromise if they were unable to pay and provided Mesa Hills with an email to send a request.[13] On that same day, Mesa Hills submitted an intake form to CMS for a debt compromise. After forty-one days, February 7, 2024, HHS informed Mesa Hills that it "was denying the request for CMS to consider reducing your client's debt."[14] HHS further stated that CMS had sufficient information to deny the request for debt compromise and did not need additional financial information from Mesa Hills. Mesa Hills has started the administrative appeal process to determine the validity of the overpayments, and it is pending.[15]

While this was going on, Mesa Hills began this suit and filed a motion for a temporary restraining order ("TRO") on December 21, 2023, asserting violations of procedural due process, *ultra vires*, violation of the statutory scheme, and abuse of discretion.[16] The Honorable Judge Kathleen Cardone denied the TRO motion on December 22, 2023, concluding that "there is no reasonable likelihood that Plaintiff will succeed on the merits of any of its claims."[17] Following

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 11.

[15] *Id.* at 12.

[16] "Application for Ex Parte Temporary Restraining Order," ECF No. 2, filed Dec. 21, 2023.

[17] "Order" 2, ECF No. 7, entered Dec. 22, 2023.

the denial of the TRO, this court granted an extension for Mesa Hills to file an amended complaint. The complaint was amended on March 22, 2024, and a motion for a preliminary injunction was filed on March 28, 2024. Mesa Hills alleged that they were going to end operations on April 14, 2024, due to the repayments.[18] Therefore, this court ordered an expedited briefing schedule on the motion for preliminary injunction and set a hearing on April 11, 2024.[19] This order now follows the conclusion of the April 11th hearing.

## II.   STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction must establish that he is (1) likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.[20] Injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.[21] If a plaintiff fails to establish each element then a preliminary injunction will not be entered.[22]

The court notes that there are significant subject matter jurisdiction questions in this case.[23] However, these jurisdictional questions will be addressed in due time. The issue before the court today is the preliminary injunction, and the analysis will pertain solely to the preliminary injunction. This is in line with Supreme Court precedent, "it was an abuse of discretion for the

---

[18] Plaintiff's Opposed Motion for Expedited Briefing Schedule on its Motion for Preliminary Injunction," ECF No. 18, filed Mar. 28, 2024.

[19] "Order Granting Plaintiff's Motion for Expedited Briefing on its Motion for Preliminary Injunction," ECF No. 20, entered April 1, 2024.

[20] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

[21] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*).

[22] *See Lake Charles Diesel, Inc. v. Fen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003).

[23] "Defendants' Motion to Dismiss the Amended Complaint," ECF No. 23, filed April 5, 2024.

District Court to grant a preliminary injunction on the view that the 'jurisdictional issues' . . . were tough, [sic] withouteven considering the merits of the underlying habeas petition."[24]

## III.   <u>DISCUSSION</u>

This court will begin with the first element—whether Mesa Hills is likely to succeed on the merits—and then lightly touch on the others. In order to show a substantial likelihood of success on the merits, a plaintiff must establish a prima facie case for its claims.[25] The pertinent question is not whether the plaintiff will succeed on the merits, based on the current record, but whether the plaintiff can show that it is *substantially likely* to succeed on the merits.[26] Here, Mesa Hills has failed to show it is substantially likely to succeed on the merits.

### A.   *Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."[27] "The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in

---

[24] *Munaf v. Geren*, 553 U.S. 674, 690–91 (2008).

[25] *See Doherty v. Nat'l Bd. of Med. Examiners*, 791 F. App'x 462, 464 (5th Cir. 2019) (citing *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013)).

[26] *See Mann v. Louisiana High Sch. Athletic Ass'n*, 535 F. App'x 405, 412 (5th Cir. 2013) (*per curiam*).

[27] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1974).

property or liberty."[28] If the plaintiff has been deprived of a protected property interest then the second inquiry is what process is constitutionally due.

Mesa Hills argues that the Government has violated its Procedural Due Process rights by failing to grant it an extended repayment plan beyond five years or otherwise issue it a debt compromise. Both in its briefing and over the course of the hearing, Mesa Hills has not been clear on the exact contours of their Due Process challenge. At times, Mesa Hills states that it has a property interest in receiving Medicare payments for earned services rendered.[29] However, most of its arguments revolve around alleged inadequate procedural processes regarding its repayment plan and debt compromise requests. Specifically, Mesa Hills argued that it should be able to appeal the denial of its repayment plan requests.[30] Under the latter, Mesa Hills would have to establish that it has a valid property interest in an extended repayment plan or debt compromise.

It makes sense that Mesa Hills would avoid making a Procedural Due Process argument based on alleged earned Medicare payments. The Fifth Circuit has explicitly declined to answer whether "Medicare payments it has earned for services rendered on properly billed claims" is a valid property interest.[31] But the Court has rejected a similar theory regarding Medicaid reimbursements.[32] However, the Court has gone on to rule, four separate times, that the current procedures in the Medicare regulatory scheme regarding alleged Medicare overpayments and

---

[28] *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 867 (5th Cir. 2022) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 283 (5th Cir. 2017)).

[29] "Opposed Motion for Preliminary Injunction" 6, ECF No. 17, filed Mar. 28, 2024.

[30] Tr. at 33 ("We are challenging the fact that we do not have any opportunity to appeal the determinations made by the Secretary or whether we – actually have the right to a revised payment plan under (f)(1)(C)(i). There's no venue for us to challenge that in the administrative appeals process.").

[31] *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 529 (5th Cir. 2020) ("But because we conclude that the government provided Sahara adequate process, we decline to decide the property interest question").

[32] *See Pers. Care Prods, Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011).

6

recoupments passes Constitutional muster.[33] While the Court noted in *Med-Cert* that "not every due-process claim challenging HHS's recoupment of overpayments" is foreclosed by precedent,[34] it is undoubtedly an uphill battle for any plaintiff looking to challenge HHS's recoupment of overpayments with a Procedural Due Process claim. Especially within the standard of review for a preliminary injunction in which a plaintiff must show a "substantial likelihood" of success on the merits. Thus, in this case, Mesa Hills has brought a differently structured Due Process challenge than the traditional challenge in recent years.

However, Mesa Hills alternative due process theory runs into a different legal roadblock, whether a valid property right exists in either an extended repayment plan beyond five years or a debt compromise.

In *Board of Regents of State Colleges v. Roth*, the Supreme Court articulated that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it."[35] A legitimate claim of entitlement is created by existing rules or understandings which, in turn, "stem from an independent source such as state law."[36] As such, property interests have been found in the form of welfare, disability payments, good time credits, parole, and a public education, among others.[37]

---

[33] *Sahara Health Care, Inc.*, 975 F.3d at 530; *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020); *Fam. Rehab., Inc. v. Becerra*, 16 F.4th 1202, 1204 (5th Cir. 2021) (*per curiam*); *Med-Cert Home Care, L.L.C. v. Becerra*, 19 F.4th 828, 830 (5th Cir. 2021).

[34] *Id.*

[35] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[36] *Id.* (Deciding that Plaintiff Roth did not have a protected property interest in returning as an assistant professor after his one-year term concluded. Roth's employment was determined by his contract, and his contract did not provide for further employment after the set end date.).

[37] *See Goldberg v. Kelly*, 397 U.S. 254, 259–60 (1970); *see also Eldridge*, 424 U.S. at 332; *see also Wolff v. McDonnell*, 418 U.S. 539, 571 (1974); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (Stating that a parolee's

In addition, the Supreme Court has established that a property or liberty interest is not manifest if the state fails to place substantive limits on official discretion.[38] If the Government has complete discretion on who can or cannot receive the benefit or whether it will be enforced, regardless of successfully completing predicate steps to qualify for the benefit, then it is not a legally enforceable property right within the meaning of the Due Process Clause.

42 U.S.C. § 1395ddd(f)(1)(A) states:

If the repayment, within 30 days by a provider of services or supplier, of an overpayment under this subchapter would constitute a hardship, subject to subparagraph (C), upon request of services or supplier the Secretary shall enter into a plan with the provider of services or supplier for the repayment of such overpayment over a period of at least 6 months but no longer than 3 years (or not longer than 5 years in the case of extreme hardship, as determined by the Secretary).[39]

Nowhere in the text of this provision is an entity given a benefit such as welfare, disability, or even Medicare payments. The plain text goes no farther than to give the Secretary the discretion

---

liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.); *see also Goss v. Lopez*, 419 U.S. 565, 574 (1975).

[38] *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989).

[39] 42 U.S.C. § 1395ddd(f)(1)(A).

to enter into a repayment plan with a provider of at least 6 months but no longer than 5 years if the Secretary determines the provider is under extreme hardship.

The other statutory provision in contention is 42 U.S.C. § 1395ddd(f)(1)(C) which says:

Subparagraph (A) shall not apply if—

(i) The Secretary has reason to suspect that the provider of services or supplier may file for bankruptcy or otherwise cease to do business or discontinue participation in the program under this subchapter…[40]

This second provision is where the Government invited Mesa Hills to apply for a debt compromise and Mesa Hills submitted a request for compromise of debt.[41] Ultimately, CMS denied Mesa Hills' debt compromise request. Mesa Hills argues this provision entitles it to a repayment plan beyond five years since they informed HHS that they may go bankrupt.[42] Whereas HHS argued that this provision could not be read to provide a right to a repayment plan beyond the mandated five years because that would hurt the Medicare program by incentivizing providers to play hard and fast with cost reports who then could use extended repayment plans as a shield.[43]

Ultimately, this provision falls far short of a protected property interest because it (1) does not outline a benefit to be received, and (2) does not curtail Government discretion in providing or enforcing a supposed benefit. By its plain terms, the provision states that subparagraph A—the provision specifying what repayment plans can be offered to providers under hardship—will not

---

[40] 42 U.S.C. § 1395ddd(f)(1)(C)(i).

[41] "Request for Compromise of Debt" 9–10, ECF No. 17–1, filed Mar. 28, 2024.

[42] Tr. 53–54.

[43] Tr. 54–55.

apply if the Secretary suspects that a provider may file for bankruptcy. This merely spells out a discretionary action by the Secretary, not a benefit.

Additionally, even if this provision provides a supposed benefit, none of its terms specify what would happen if subparagraph C were used and subparagraph A no longer applies. Presumably, this means that HHS is dealing with a provider it suspects is going to file for bankruptcy, so it could conceivably offer a repayment plan beyond five years as Mesa Hills prefers. HHS could also offer no repayment plan at all. It appears to give the Secretary full discretion to deal with a potentially bankrupt provider how he sees fit and removes the statutorily mandated confines of subparagraph A. That type of discretion is certainly not the hallmark of a protected property interest. Given these issues, Mesa Hills has not shown a substantial likelihood of success on the merits regarding its Due Process claim.

B.    *Takings Clause*

Mesa Hills next argues that HHS violates the Takings Clause by forcing it into an unfeasible repayment plan which is causing its business to fail.[44] The Takings Clause of the Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." The aim of the Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."[45] The party challenging governmental action as an unconstitutional taking bears a substantial burden.[46] A threshold determination in any takings case is whether the plaintiff has

---

[44] "Opposed Motion for Preliminary Injunction" 6, ECF No. 17, filed Mar. 28, 2024.

[45] *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

[46] *United States v. Sperry Corp.*, 493 U.S. 52, 60 (1989).

asserted a legally cognizable property interest.[47] "Without a legally cognizable property interest, [the plaintiff] has no cognizable takings claim."[48]

      The problems with the aforementioned alleged property interests under Due Process have already been discussed. As for a property interest in one's general business, the Supreme Court has held "business in the sense of the *activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense."[49] Thus, the Third Circuit has declined to recognize a general right to do business as a property interest cognizable under the Takings Clause.[50]

      Additionally, given the fact that a provider must *voluntarily* join the Medicare program, the Eighth Circuit has held "[t]his voluntariness forecloses the possibility that the statute could result in an imposed taking of private property which would give rise to the constitutional right of just compensation . . ."[51] While these holdings from the Third and Eighth Circuits are not binding on this court, it finds them persuasive to the case at hand.

      *C.*     *Ultra Vires and Violating the Statutory Scheme*

      Plaintiff's next claims for relief, that the Secretary acted *ultra vires* by failing to allow a feasible repayment plan and consider a debt compromise,[52] are also unlikely to succeed on the merits. To act *ultra vires* a government official is either acting in a way that is impermissible under the Constitution or acting outside of the confines of his statutory authority. As Judge Cardone

---

[47] *See In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017).

[48] *Id.*

[49] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (emphasis in original)

[50] *Nekrilov v. City of Jersey City*, 45 F.4th 662, 670 (3d Cir. 2022).

[51] *Se. Arkansas Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016) (internal citations omitted).

[52] "Opposed Motion for Preliminary Injunction" 6, ECF No. 17, filed Mar. 28, 2024.

pointed out in her order denying Mesa Hills TRO, Mesa Hills is asking this court to order the Secretary to act outside of his statutory authority.[53] 42 U.S.C. § 1395ddd(f)(1)(A) allows the Secretary to grant no more than a five-year repayment plan to a provider under extreme hardship. The Secretary would actually be acting *ultra vires* if he were to grant a repayment plan beyond five-years under subparagraph A.

Subparagraph C does not save Mesa Hills *ultra vires* argument. As has already been discussed, at most, subparagraph C would make subparagraph A inapplicable when dealing with a provider the Secretary suspects may file for bankruptcy. However, there is neither any feasibility language nor feasibility requirement in subparagraph C. The Secretary is not mandated to provide any type of feasible repayment plan under subparagraph C. Therefore, the Secretary has not acted beyond his statutory authority.

### D.    *Abuse of Discretion*

Mesa Hills' final argument is that HHS abused its discretion in failing to consider a feasible repayment plan or properly consider or refer the debt compromise request.[54] Again, the court notes that HHS granted Mesa Hills' requests to put three of the four overpayments on the maximum five-year repayment plan allowed under statute.

However, the larger problem with this argument is that Mesa Hills does not come close to showing a substantial likelihood of success on the merits. Mesa Hills provides zero case citations or principles of law from which they are basing this cause of action. Therefore, Mesa Hills has not

---

[53] "Order" 5, ECF No. 7, entered Dec. 22, 2023.

[54] "Opposed Motion for Preliminary Injunction" 7, ECF No. 17, filed Mar. 28, 2024.

established a prima facie case nor even a bare foundation on which to evaluate the likelihood of success on the merits. Accordingly, it has not carried its burden.

Additionally, Mesa Hills argument that HHS abused its discretion by not referring the debt to the Department of Justice under 42 C.F.R. § 401.601(c) is not convincing. 42 C.F.R. § 405.376(c) states, "[a] claim for recovery of Medicare overpayments against a debtor *may* be compromised, or collection action on it may be suspended or terminated, by the Centers for Medicare and Medicaid Services (CMS) if . . ."[55] By its plain terms, § 405.376(c) gives the government discretion—"may be compromised"—on whether it wants to reach a compromise with a Medicare provider for an overpayment debt. The denial of compromise is not an abuse of discretion.

E.       *Other Preliminary Injunction Elements*

By failing to satisfy the first preliminary injunction element on any of its claims, Mesa Hills is already not entitled to a preliminary injunction. However, the court will expound on a few problems regarding the other elements.

The second element is that a plaintiff must show a substantial threat of irreparable injury if the injunction is not issued. Given the context of this case, Mesa Hills is arguing that the recoupment of these alleged overpayments is threatening the irreparable injury of going out of business. Mesa Hills attests that for the 2023 fiscal year it suffered a net loss of over $ 8,000,000.00.[56] Mesa Hills was not informed of the first set of overpayments for both 2018 and 2019 until early 2023, and then June 30, 2023, for the 2020 and 2021 overpayments.[57] The

---

[55] 42 C.F.R. § 405.376(c) (emphasis added).

[56] Amended Complaint at 9.

[57] Id. at 8–9.

repayment plans were not finalized until early December 2023, at which time Mesa Hills learned that its monthly recoupment payments would be $ 128,611.62. One can reasonably conclude that the majority of Mesa Hills negative gross revenue for 2023 can not be attributed to Medicare recoupment payments. While these payments will assuredly do Mesa Hills no favors going forward in 2024, it has failed to show how temporarily stopping these payments is somehow going to stop their alleged fall into bankruptcy.

A preliminary injunction should only be issued if the irreparable injury is *likely* in the absence of an injunction.[58] While this inquiry generally takes the shape of whether the irreparable injury is "likely" as opposed to merely possible, it also begs the question of whether the preliminary injunction would actually stop the "likely" irreparable threat. This court takes heed of Mesa Hills' statements that it may be going into bankruptcy and that this is a likely irreparable threat. But Mesa Hills has not clearly shown that a preliminary injunction would actually prevent the threat given Mesa Hills clear financial difficulties regardless of the overpayment debts.

Element four is also not so easily decided. At the preliminary injunction hearing, Mesa Hills argued that granting the injunction will not disservice the public interest because the public would prefer getting some of the overpayments paid back than get nothing back when Mesa Hills goes into bankruptcy.[59] There is some force to this point. The public would likely prefer to see some of the money recouped over none of it; however, the Government brought up an equally compelling argument. Put more poignantly, it does not serve the public to allow an alleged serial over biller to continue billing for Medicare payments while it does not have to make repayments

---

[58] *Winter*, 555 U.S. at 22.

[59] Tr. at 16.

until it receives its preferred repayment schedule.[60] This is especially on point if the alleged provider is teetering towards insolvency because their bills will compound but the Medicare system will still not receive its recoupments. Thus, it serves the public interest—and the Medicare system—to not provide lifelines to those providers who take from the system without giving back what they owe. In its application for a debt compromise, Mesa Hills indicated that it is still billing Medicare.[61]

The latter policy argument appears to be more inline with Congress' intent given that HHS is not allowed to consider previous overpayment repayment plans when considering whether to grant subsequent overpayment repayment requests.[62] And the fact that Congress explicitly included a provision that if a provider fails to make a payment under a repayment plan, then the Secretary may immediately seek to recover the total balance outstanding.[63] These provisions do not show much leniency towards providers who are repeat offenders or who have defaulted on payment.

Accordingly, it is **HEREBY ORDERED** that "Opposed Motion for Preliminary Injunction" [ECF No. 17] is **DENIED**.

**SIGNED AND ENTERED** this **17th** day of **April 2024.**

_____
**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[60] Tr. at 54–55.

[61] "Request for Compromise of Debt" 10, ECF No. 17–1, filed Mar. 28, 2024.

[62] 42 U.S.C. § 1395ddd(f)(1)(B)(iii).

[63] 42 U.S.C. § 1395ddd(f)(D).